### ALDRICH v. BRINKER.

(District Court, W. D. New York. January 25, 1906.)

INSURANCE—ASSIGNMENT OF LIFE POLICY—RIGHT OF ASSIGNEE.

Where a wife joined in the assignment of a paid-up policy of insurance on the life of her husband, in which she was beneficiary, to a bank, with the understanding on her part, justified by the conversation at the time between her husband and the officer of the bank that the assignment was made only as security for a loan then made her husband, it can be enforced after the death of her husband only to that extent as against her, notwithstanding a further agreement, made contemporaneously between her husband and the bank, that the assignment should stand as security for other indebtedness.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 492, 1481.]

At Law. Action to recover $4,760 on policy of life insurance. Trial by jury waived.

Hotchkiss & Bush, for plaintiff.
Thomas E. Boyd, for defendant.

HAZEL, District Judge. The question submitted for determination is whether the substituted defendant, Clara S. Brinker, at the time she executed the assignment mentioned in the complaint, which on its face purports to be an absolute transfer of her beneficial interest in a life insurance policy issued to her husband, did so to secure a specific loan of $1,000. The proofs show that on April 4, 1899, the policy under its terms became one for paid-up insurance in the sum of $4,760. The assured died on June 9, 1903. Prior thereto, on April 10, 1899, he assigned the policy of insurance in a separate instrument, which also in terms was absolute on its face, and in addition thereto he executed and delivered a pledge by which the said policy was delivered as a continuing security for the payment. of his individual and firm debts and obligations which he then owed the said bank or thereafter might owe. Although the latter instrument was executed and delivered contemporaneously with the assignments, Mrs. Brinker, the beneficiary, had no knowledge of it. As far as she is concerned, the evidence indicates her intention to conditionally surrender her interest in the policy to secure a loan for a stipulated amount. Upon the death of Mr. Brinker, suit was brought by the receiver of the City National Bank of Buffalo, N. Y., against the New York Life Insurance Company to compel payment to him of the entire sum due on the policy, claiming that the bank under the assignments above mentioned was the absolute owner thereof, and that the assured at the time of his death was indebted to the bank individually and as a member of the firm of Brinker & Co.

There is no disagreement in relation to the principle of law which applies to this controversy. Even though the assignment was absolute on its face, the court is bound to inquire into the actual transaction between the parties for the purpose of ascertaining whether the instrument was executed merely as a security for the payment of the loan or subject to other conditions. It is true the testimony of Mrs. Brinker does not conclusively show a personal understanding with the bank that the assignment was to be held as security for the repayment by her husband of the note given to secure the said sum of $1,000; but she testifies that, needing money to pay certain debts, she and her husband went to the bank for the purpose of procuring a loan of $1,000, and her husband said to Mr. Berry, an officer of the bank, that they wanted to put up the policy for $1,000. She then executed the assignment and the money was placed to the credit of her husband, and she received from him that day about the sum of $500. It is clear that as far as the defendant is concerned it was her understanding that the assignment simply secured said loan. That it was the understanding of the bank that the policy stood as collateral for a specific loan finds some corroboration, perhaps, in the entry made at the time in the collateral book. The testimony of Mr. Pitman is also somewhat illuminative of the claim of the defendant. He testifies that the firm of J. M. Brinker & Co., of

which he was a member, did not on April 10, 1899, borrow $1,000 from the bank, and that the interest upon the promissory note given that day by Mr. Brinker was afterwards demanded of him individually. These occurrences tend to negative the claim of the plaintiff that the policy as to the defendant stood as general collateral for the obligations of the firm of J. M. Brinker & Co. and of Mr. Brinker individually.

The written pledge accompanying the assignment, in view of the absence of knowledge on the part of the defendant, does not, in my opinion, alter the original purpose of the transaction. The testimony of Mr. Cornwell, witness for plaintiff and president of the bank, is simply to the effect that Mr. Brinker wanted to secure a loan, and that the bank, not wishing to increase the existing indebtedness without security, accepted his offer of the life insurance policy "and the loan was granted to him." Manifestly he referred to the $1,000 loan, for he adds that nothing was said about the policy being treated as specific collateral to secure the advance. It is not shown that anything was said to Mrs. Brinker to the effect that the assignments would be treated as a continuing collateral for the indebtedness of the firm of J. M. Brinker & Co., or for any purpose other than the loan in question. As the evidence satisfactorily shows that the defendant did not assign and transfer her rights in the policy of insurance in question, except as security for the loan of $1,000 and interest, it follows that judgment may be entered appropriately decreeing the payment by the clerk, out of the fund deposited with him by the original defendant, the amounts of money to which the plaintiff and defendant are each respectively entitled. The ruling which was reserved by the court on motion of the plaintiff at the close of the case to amend the complaint to conform to the evidence is allowed.

Judgment may be entered accordingly.